## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

E-Z PACK MANUFACTURING, LLC,

        Plaintiff,

                                          CaseNo. 8:10-CV-1870-T-27AEP

RDK TRUCK SALES & SERVICE, INC,
and ADAMO REALTY MANAGEMENT,
LCC,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

      THIS MATTER comes before the Court on the Plaintiff E-Z Pack Manufacturing, LLC's ("E-Z Pack") Motion to Dismiss the Amended Counterclaim and/or Motion for More Definite Statement (Dkt. No. 25), Defendants RDK Truck Sales & Service, Inc.'s and Adamo Realty Management, LLC's (together as "RDK") Response in Opposition thereto (Dkt. No. 31), E-Z Pack's Motion to Sever the Amended Counterclaim (Dkt. No. 26), and RDK's Response in Opposition thereto (Dkt. No. 32).   E-Z Pack seeks to dismiss RDK's six counterclaims for failure to state a claim under Federal Rule of Civil Procedure 12(b) (Dkt. No. 25 at 5), or in the alternative, require RDK to provide a more definite statement as to its allegations pursuant to Federal Rule of Civil Procedure 12(e) (Dkt. No. 25 at 12).   E-Z Pack also seeks to sever the Amended Counterclaim where it "interject[s] claims and issues related to legally and factually distinct claims that are not otherwise at issue in the Federal Litigation."   (Dkt. No. 26 at 8.)   For the foregoing reasons, the Court **RECOMMENDS** that E-Z Pack's Motion to Dismiss (Dkt. No. 25) be

**GRANTED** as to Count IV of the Amended Counterclaim and **DENIED** as to Counts I, II, III, V, and VI of the Amended Counterclaim; E-Z Pack's Motion for More Definite Statement (Dkt. No. 25) be **DENIED**; and E-Z Pack's Motion to Sever (Dkt. No. 26) be **DENIED**.

## I.

RDK is in the business of selling, renting, and leasing refuse equipment, garbage trucks, and related parts to the waste hauling industry in the Southeastern United States.   (Dkt. No. 7 at 7.)  Since 2004, RDK has purchased waste hauling equipment and parts from E-Z Pack.   (Dkt. No. 7 at 8.)   According to RDK, when the economy began to collapse in late 2009, RDK agreed to allow E-Z Pack to review RDK's financial and business records to "shore up the financial relationship between the parties."   (Dkt. No. 7 at 9.)   Prior to exchanging these documents, E-Z Pack and RDK entered into a Confidentiality Agreement (the "Confidentiality Agreement") on September 9, 2009.   (Dkt. No. 7 Ex. A.)   To accompany this exchange of information, the parties entered into a series of agreements (the "Loan Documents"), encompassing an Accounts Payable Payment Agreement ("Payment Agreement") (Dkt. No. 1 Ex. A) between E-Z Pack and RDK, a Hypothecation Agreement (Dkt. No. 1, Ex. B) between E-Z Pack and RDK, and a Mortgage and Security Agreement ("Mortgage Agreement") (Dkt. No. 1 Ex. C) between E-Z Pack and Adamo Realty Management, LLC ("Adamo").[1]

The Confidentiality Agreement restricted E-Z Pack's use of RDK's confidential business and financial information and prohibited E-Z Pack from hiring, recruiting, or contracting with any

---

[1]   Adamo is the only Defendant signatory to the Mortgage Agreement.   Adamo is also one of the two Defendants in this lawsuit, referred to collectively as "RDK."   Where appropriate, this Court will refer to Adamo separately by its own name.

current or former RDK employees.   (Dkt. No. 7 Ex. A.)   The Payment Agreement provided RDK until March 31, 2010 to pay $2,168,198.75 in outstanding debt in exchange for E-Z Pack's agreement to continue selling products and services to RDK.   (Dkt. No. 1 Ex. A.)   The Payment Agreement also created a mortgage and continuing lien in the amount of $2,120,000.00 on RDK's property located at 3214 Adamo Drive, Tampa, FL 33605 (the "Property") as security for RDK's obligations.   (*Id.*)   Attached to the Accounts Payable Payment Agreement are the invoices accounting for the outstanding debt of $2,168,198.75.   (*Id.*)   The Hypothecation Agreement, executed concurrently with the Payment Agreement, reiterated the obligations under the Payment Agreement, and granted to E-Z Pack a mortgage and security interest in the Property.   (Dkt. No. 1 Ex. B.)   The Mortgage Agreement created the actual security arrangement between E-Z Pack and Adamo over the Property.   (Dkt. No. 1 Ex. C.)

According to E-Z Pack, as of August 12, 2010, RDK had not fulfilled its obligations under the Loan Documents.   (Dkt. No. 1 at 2-3.)   On August 23, 2010, E-Z Pack initiated the instant action, alleging in the Complaint a breach of contract by RDK with respect to the Loan Documents, and an action to foreclose E-Z Pack's mortgage lien upon the Property to satisfy the obligations under the Loan Documents.   (Dkt. No. 1.)   On September 10, 2010, RDK filed its Answer, Affirmative Defenses, and Counterclaims (Dkt. No. 7), naming eleven affirmative defenses and six counterclaims, as well as a demand for jury trial.   E-Z Pack then moved to strike RDK's demand for jury trial in favor of the jury waiver.   (Dkt. No. 10.)   The Court denied E-Z Pack's motion, reasoning that the jury waiver only applied to Adamo and E-Z Pack because it was only contained in the Mortgage Agreement signed by Adamo and E-Z Pack.   (Dkt. No. 22.)

RDK then filed an Amended Answer, Affirmative Defenses and Counterclaims on November 18, 2010.  (Dkt. No. 23).[2]

RDK's six counterclaims include: breach of the Confidentiality Agreement; breach of purchase/rental orders; open account; breach of warranty; violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); and tortious interference with advantageous business relationships. (Dkt. No. 23.)  According to RDK, E-Z Pack unlawfully used the confidential information it obtained from RDK to solicit RDK's customers and to hire two former RDK employees in violation of the Confidentiality Agreement.  (Dkt. No. 23 at 7-17, 26-34.)  Also, RDK claims that E-Z Pack failed to pay numerous invoices for equipment that E-Z Pack rented and bought from RDK, and in addition, failed to provide warranty services to equipment E-Z Pack sold to RDK.  (Dkt. No. 23 at 7-14, 18-25.)

On December 22, 2010, E-Z Pack filed the current Motion to Dismiss RDK's Amended Counterclaim and/or for More Definite Statement (Dkt. No. 25), alleging that all counts of RDK's counterclaim are improperly stated.  Also on December 22, 2010, E-Z Pack filed a Motion to Sever RDK's Amended Counterclaim (Dkt. No. 26),  claiming that RDK's Amended Counterclaim contains facts and issues that do not arise out of the same facts and issues in the original Complaint.  In its Response in Opposition to E-Z Pack's Motion to Dismiss RDK's Amended Counterclaim and/or for More Definite Statement (Dkt. No. 31), RDK argues that all counts of the Amended Counterclaim were pleaded with sufficient detail and facts.  In its

---

[2]  RDK attached Exhibits A, B, and C to its original Answer, (Dkt. No. 7) but failed to attach the Exhibits to its Amended Answer.  (Dkt. No. 23.)  The Court will incorporate the Exhibits attached to RDK's original Answer for the purposes of this Report and Recommendation.

Response in Opposition to E-Z Pack's Motion to Sever (Dkt. No. 32), RDK asserts that E-Z Pack has failed to meet its burden of establishing that severance is necessary or would serve judicial economy or avoid inconvenience or prejudice to the parties.

**II.**

**A.     Motion to Dismiss Defendant's Amended Counterclaims for Failure to State a Claim**

       **1.     Legal Standard**

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the claims are construed in the light most favorable to the non-moving party and factual allegations are taken as true.   *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corporation S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983).   A counterclaim must contain a short and plain statement demonstrating an entitlement to relief, and the statement must "give the defendant 'fair notice of what the [] claim is and the grounds upon which it rests.' "   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005)).

In order to survive a motion to dismiss, a counterclaim "does not need detailed factual allegations," but must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009); *Randall v. Scott*, 610 F.3d 701, 708 (11th Cir. 2010).   Thus, while a counterclaim attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations, ... a [counter-plaintiff's] obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

5

cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.*

> 2.    **Discussion**
>
>> a)        **Count I:   Breach of the Confidentiality Agreement**

E-Z Pack first moves to dismiss RDK's breach of contract claim because RDK failed to allege a plausible claim for damages resulting from E-Z Pack's breach of the Confidentiality Agreement.  (Dkt. No. 25 at ¶¶ 13, 15.)  To survive dismissal for a breach of contract claim, a counter-plaintiff must allege "(1) the existence of a contract, (2) a breach of the contract, and (3) damages *resulting* from the breach."  *Zarrella v. Pac. Life Ins. Co.,* 755 F. Supp. 2d 1218, 1226 (S.D. Fla. 2010) (emphasis added); *Rollins, Inc. v. Butland,* 951 So.2d 860, 876 (Fla. 2d DCA 2006).  Here, RDK has adequately alleged the existence of a valid contract in the attached Confidentiality Agreement, and a material breach of the Confidentiality Agreement by alleging that E-Z Pack hired two former RDK employees in violation of a provision in the agreement that prohibited E-Z Pack from hiring, recruiting, or contracting with any current or former RDK employees.  (Dkt. No. 23 at ¶¶ 15.)  However, E-Z Pack argues that RDK has failed to state a claim for breach of contract because it has not properly alleged damages resulting from the breach of the Confidentiality Agreement.   (Dkt. No. 25 at 6.)

In its Counterclaim, RDK states that "[a]s a result of EZ's breach of the Agreement, RDK suffered and continues to suffer damages."   (Dkt. No. 23 at ¶ 17.)   Paragraph 9 of the Confidentiality Agreement states that in the event of breach, "it is agreed and understood that

[RDK] shall have no adequate remedy in money or other damages and accordingly shall be entitled to injunctive relief."   (Dkt. No. 7 Ex. A.)   Further, "under no circumstances shall [E-Z Pack] be liable to [RDK] for any consequential, special, exemplary or punitive damages."   (*Id*.)   E-Z Pack argues that given this explicit exclusion of certain damages, and the absence of a request for injunctive relief, "it is unclear from the Amended Counterclaim what damages are sought by RDK ...."   (Dkt. No. 25 at 7.)

RDK argues that other language in Paragraph 9 should control the Court's damages inquiry. Specifically, Paragraph 9 of the Confidentiality Agreement provides that "no specification in this Agreement of any particular remedy shall be construed as a waiver or prohibition of *any other remedies* in the event of a breach or threatened breach of this Agreement."   (Dkt. No. 25 at 6 (emphasis added).)   Thus, RDK argues that since it is only asking for "general damages," as opposed to those damages excluded in Paragraph 9 of the Confidentiality Agreement, RDK should be able to proceed with its breach of contract claim.   (Dkt. No. 31 at 3-4.)   Specifically, RDK argues that even where consequential damages are barred, it should be able to seek other damages including nominal damages upon proof of a breach of the Confidentiality Agreement (Dkt. No. 31 at 4.)

In a breach of contract action, even if a party is unable to sufficiently allege *quantifiable* damages, either because that party may be barred by the contract at issue or there is no evidence in support of actual damages, under Florida Law, a party may nevertheless recover nominal damages. *See Onontario of Florida, Inc. v. R. P. Trucking Co., Inc.*, 399 So. 2d 1117, 1118 (Fla. 4th DCA 1981) (finding that the nonmoving party was "entitled to nominal damages once the breach of

contract had been established, notwithstanding the absence of evidence regarding the correct measure of damages") (quoting *Muroff v. Dill*, 386 So. 2d 1281, 1283 (Fla. 4th DCA 1980); *AMC/Jeep of Vero Beach, Inc. v. Funston*, 403 So. 2d 602, 605 (Fla. 4th DCA 1981) ("While there is a legal remedy for every legal wrong and, thus, a cause of action exists for every breach of contract, an aggrieved party who has suffered no damage is only entitled to a judgment for nominal damages."); *Preferred Care Partners Holding Corp v. Humana, Inc.*, Case No. 08-20424-CIV, 2009 WL 982433 at *5 (S.D. Fla. Apr. 9, 2009) (denying summary judgment in a breach of contract claim involving a confidentiality agreement where, even though the nonmoving party was unable to prove calculable damages, it may still recover nominal damages) (citing *Destiny Constr. Co. v. Martin K. Emby Constr.*, 662 So. 2d 388, 390 (Fla. 5th DCA 1995)); *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1327 (11th Cir. 1998) (finding that, when applying Florida law, if a breach of contract has been established and there is insufficient evidence to ascertain the particular amount of loss, an award of nominal damages may be proper). Thus, even though RDK states in its Amended Counterclaim that it "suffered and continues to suffer *damages*" (Dkt. No. 23 at 7 (emphasis added)), RDK may at the very least be entitled to nominal damages and has therefore stated a plausible claim for breach of contract under Florida law. *See Beverage Canners, Inc. v. Cott Corp.*, 372 So. 2d 954, 956 (Fla. 3d DCA 1979) ("[W]hen the breach of an agreement or invasion of a right is established, since the law infers some damage to the injured party, where there is insufficient evidence presented to ascertain the particular amount of loss, the award of nominal damages is proper."); *Kona Spring Water Distributing, Ltd. v. World Triathlon Corp.*, Case No. 8:05-cv-119-T-23TBM, 2007 WL 842969 at *2 (M.D. Fla. Mar. 19,

8

2007) (finding that in a breach of contract suit, regardless of the plaintiff's entitlement to consequential damages, "the possibility of an award for nominal damages precludes summary judgment").

In order to survive a motion to dismiss, RDK must also allege the existence of one or more legitimate business interests justifying the restrictive covenant and stating that the restriction is reasonably necessary to protect those legitimate business interests. Fla. Stat. § 542.335(1)(b)-(c); *GPS Indus., LLC v. Lewis,* 691 F. Supp. 2d 1327, 1333 (M.D. Fla. 2010). E-Z Pack claims that RDK failed to allege a legitimate business interest. (Dkt. No. 25 at 6-7.) Legitimate business interests include trade secrets, as defined in Fla. Stat. § 688.002(4); valuable confidential business or professional information that otherwise does not qualify as trade secrets; substantial relationships with specific prospective or existing customers or clients; customer or client goodwill associated with a specific geographic location or specific marketing or trade area; and extraordinary or specialized training. Fla. Stat. § 542.335(1)(b).

RDK argues that it has sufficiently alleged a legitimate business interest justifying the restrictive covenant by stating that it provided E-Z Pack with confidential and proprietary business documents that were subject to limited use, as evidenced by the attached Confidentiality Agreement. (Dkt. No. 31 at 5; Dkt. No. 7 Ex. A.) Considering both RDK's allegations in its Amended Complaint and the content of the attached Confidentiality Agreement, the Court finds that RDK has sufficiently alleged facts to show that it had a legitimate business interest in protecting confidential business information and trade secrets that justified the restrictive covenant, and that the restrictive covenant was reasonably necessary to protect its confidential

9

business information.   (Dkt. No. 23 at 9-10, Ex. A.)   Thus, the Court finds that RDK has properly

stated its Count I counterclaim for breach of contract.

> **b)    Count II and III:  Breach of Purchase/Rental Orders and Open Account**

E-Z Pack moves to dismiss RDK's Count II breach of purchase/rental orders claim because,

in the context of RDK's requirement that it plead the existence of a valid contract, E-Z Pack argues

that it is "unclear from the allegations plead in the Amended Counterclaim to [sic] extent to which

E-Z Pack had an agreement to purchase or rented [sic] parts and/or equipment and whether RDK

provided all of the consideration for such an agreement."  (Dkt. No. 25 at 7.)   E-Z Pack also

moves to dismiss RDK's alternative Count III claim for open account because, to the extent that its

Count II breach of purchase/rental orders claim is "predicated on a written contract, it is

inconsistent with Count III."   (Dkt. No. 25 at 8.)   The reasoning behind E-Z Pack's arguments is

clear: a breach of contract claim cannot go forward *without* the existence of a valid contract, and a

claim for open account cannot go forward *with* the existence of a valid contract.   *See Hayes v.

Marriott Ownership Resorts, Inc.*, Case No. 6:08-cv-180-Orl-19KRS, 2008 WL 2783365 at \*3

(M.D. Fla. 2008) (citing *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA

2008) ("An adequately pled breach of contract action requires three elements: (1) a valid contract;

(2) a material breach; and (3) damages.")); *Immediate Capital Group, Inc. v. Spongetech Delivery

System, Inc.*, Case No. 10-60059-CIV, 2010 WL 1644952 at \*1 (S.D. Fla. Apr. 22, 2010) (finding

that a "claim for open account fails if it alleges the existence of an express contract").   However,

in using alternative arguments to attempt to dismiss both claims, E-Z Pack seems to concede that it

is plausible that an express contract governing the purchase/rental orders *may or may not* have existed. When multiple bases for relief are plausible, a Plaintiff is entitled under Rule 8(d) to plead theories in the alternative. *See* Fed. R. Civ. P. 8(d) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *WESI, LLC v. Compass Environmental, Inc.*, 509 F.Supp.2d 1353, 1363 (N.D. Ga. 2007) (finding that dismissal of an unjust enrichment claim was inappropriate because the plaintiff was entitled to assert alternative claims to its breach of contract claim). Here, because of the difficulty courts have had in defining what is required to plead a claim for "open account" and the apparent uncertainty by both parties as to whether express contracts governed the relevant purchase/rental orders, the Court finds that neither claim should be dismissed.

In Florida, an open account has been defined as an "unsettled debt arising from items of work and labor, goods sold and delivered with the expectation of further transactions subject to further settlement." *Supermedia LLC v. Pre Enterprises, LLC*, 8:10-cv-647-T30-TGW, 2010 WL 2734411 (M.D. Fla. July 8, 2010) (quoting *Central Insurance Underwriters, Inc. v. National Insurance Finance Company,* 599 So. 2d 1371, 1373 (Fla. 3d DCA 1992)). In order to state a claim for open account, the claimant must allege (1) that a sales contract existed between the creditor and debtor, (2) that the amount claimed by the creditor represents either the agreed on sales price or the reasonable value of the goods delivered, and (3) that the goods were actually delivered. *Evans v. Delro Indus., Inc.,* 509 So. 2d 1262, 1263 (Fla. 1st DCA 1987). The claimant must also attach an "itemized" copy of the account. *Supermedia LLC v. Pre Enterprises, LLC*, 2010 WL 2734411 (M.D. Fla. July 8, 2010) (citing *H & H Design Builders, Inc. v. Travelers'*

11

*Indem. Co.*, 639 So. 2d 697, 700 (Fla. 5th DCA 1994)).   Finally, despite the apparent requirement

that a claimant allege a "sales contract" between the creditor and debtor, Florida courts have also

consistently held that an open account should not include express contracts or other obligations

that have been reduced to writing.   *See Immediate Capital Group, Inc. v. Spongetech Delivery

Sys., Inc.,* No. 10-60059-CIV, 2010 WL 1644952 (S.D. Fla. Apr.22, 2010) (finding that where a

claim for open account incorporates the allegations that precede it concerning the existence of

express contracts between the parties, the claim for open account must be dismissed); *Spring Air

Int'l LLC v. R.T.G. Furniture Corp.*, 8:10-CV-1200-T-33TGW, 2010 WL 4117627 (M.D. Fla.

Oct. 19, 2010); *Morse, LLC v. United Wis. Life Ins. Co.,* 356 F.Supp.2d 1296, 1299-1300 (S.D.

Fla. 2005); *H & H Design Builders, Inc.,* 639 So. 2d at 700; *but see Robert W. Gottfried, Inc. v.

Cole*, 454 So.2d 695, 696 (Fla. 4th DCA 1984) (reversing the lower court's dismissal of a claim for

open account even though an express contract evidenced the disputed open account between the

parties).

      Count III of RDK's Amended Counterclaim explicitly references the orders placed by E-Z

Pack and references the corresponding invoices to those orders.   (Dkt. No. 23 at 7.)   While it is

unclear whether those orders or invoices constituted the "sales contracts" required in pleading a

claim for open account, or the "express contracts between the parties" requiring dismissal, the

Court finds that RDK has nevertheless alleged enough facts to state a claim for relief that is

plausible on its face.   Counts II and III of RDK's Amended Counterclaim indicate that from

March 2009 to June 2010, *some* agreement(s) between RDK and E-Z Pack resulted in goods being

delivered and payment being owed.   The exact nature of the agreement(s) may ultimately

determine whether the alleged failure to pay under the purchase/rental orders should be resolved as a claim for breach of contract or a claim for open account.    Either way, since the Court finds both claims to be plausible, the evidentiary dispute as to the nature of the relevant agreements should not be decided at the dismissal stage.    Therefore, the Court finds that RDK's Count II breach of purchase/rental orders and Count III open account counterclaims should not be dismissed.

### c)        Count IV:   Breach of Warranty

E-Z Pack moves to dismiss Count IV for breach of warranty because RDK has failed to allege facts as to most if not all of the required elements to state a breach of warranty claim.    (Dkt. No. 25 at 9.)    In order to properly plead a cause of action for breach of warranty under the Florida Uniform Commercial Code, a complaint should contain at least the following allegations: (1) the sale of goods; (2) the warranty under which relief is sought; (3) how the warranty arose; (4) the breach of the warranty; (5) notice to the seller of the breach; (6) and the injury sustained by the buyer.    *Dunham-Bush, Inc. v. Thermo-Air Service, Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977). Here, RDK fails to allege any facts with respect to the type and terms of the warranty under which it is seeking relief (i.e. express warranty, implied warranty of fitness, etc.), or any facts giving rise to the creation of the warranty.    Thus, RDK's claim that E-Z Pack "failed to honor its warranty obligations on equipment and parts supplied to RDK," and "as a result ... RDK suffered and continues to suffer losses," is not sufficient to allege a plausible breach of warranty claim under the Florida Uniform Commercial Code.    *14250 Realty Associates, Ltd. v. Weddle Bros. Const. Co.*, 8:07-CV-788-T-27EAJ, 2008 WL 4853635 (M.D. Fla. Nov. 6, 2008) (holding the third party defendant failed to state a claim for breach of warranty because it did not allege facts identifying

the origin of the warranty, the terms of the warranty, and how the warranty was breached). Accordingly, RDK's Count IV breach of warranty counterclaim should be dismissed.

   **d)**  **Count V:   The Florida Deceptive and Unfair Trade Practices Act**

  Count V of RDK's counterclaim alleges an unfair or deceptive practice under the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA").   E-Z Pack contends that RDK failed to allege how E-Z Pack's conduct constituted an unfair practice as required by Fla. Stat. § 501.204(1), how the unfair trade practice caused damages, and what damages the unfair practice caused.   (Dkt. No. 25 at 10).

  A claim for damages under the FDUTPA requires the Plaintiff to allege the following three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009); *City First Mortgage Corp. v. Barton,* 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (quoting *Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. 2d DCA 2006), *review denied,* 962 So. 2d 335 (Fla.2007)). The conduct constituting a deceptive or unfair practice for the purposes of a FDUTPA claim may be defined by "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices."   Fla. Stat. § 501.203(3)(c).   "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."   *Romantic Tours, Inc. v. Anastasia Int'l, Inc.,* 8:10-CV-2321-T-23TBM, 2011 WL 653724 at *2 (M.D. Fla. Feb. 14, 2011) (quoting *Rollins,* 951 So.2d at 869).   Although a FDUTPA claim "may arise from a single contract, this principle does not operate to convert every breach of contract into a claim under the Act," but instead

reaches only that conduct which is unfair or deceptive.   *Siever*, 669 F. Supp. at 1286, 1292-93 (M.D. Fla. 2009) (citing *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.,* 532 F. Supp. 2d, 1350, 1364 (M.D. Fla.2007)).

Here, RDK has sufficiently alleged all three elements for a claim under the FDUTPA.   RDK alleged facts demonstrating unfair trade practices by claiming that E-Z Pack used the confidential information it gained under the Confidential Agreement to solicit and interfere with RDK's customers and hire former RDK employees.   (Dkt. No. 23 at 9.)   RDK also alleged that as a result of these unfair practices, it suffered damages including lost sales, lost business goodwill and reputation, and lost business opportunities.   (Dkt. No. 23 at 9.)   The Court therefore finds that RDK has properly stated its Count V counterclaim under the FDUTPA.

> e)   **Count VI:   Tortious Interference with Advantageous Business Relationships**

Finally, in Count VI, RDK alleges that E-Z Pack "intentionally ... interfered with RDK's advantageous business relationships ... by improperly utilizing RDK's confidential and business information ... and wrongfully purloined former RDK employees."   (Dkt. No. 23 at ¶¶ 30-34). In order to properly plead a claim for intentional interference with advantageous business relationships under Florida law, a plaintiff must assert: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff.   *Int'l Sales & Serv., Inc. v. Austral Insulated Products, Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (citing *Ethan Allen, Inc. v. Georgetown*

*Manor, Inc.*, 647 So.2d 812, 814 (Fla.1994)).   RDK has properly alleged elements (2)-(4) for a claim of tortious interference with advantageous business relationships.   (Dkt. No. 23 at ¶¶ 32-34).   E-Z Pack argues that RDK has not properly stated its tortious interference claim because RDK has not alleged a business relationship with "identifiable customers" as required by Florida law.   (Dkt. No. 25 at ¶¶ 34-35 (citing *Int'l Sales*, 262 F.3d at 1152).)   RDK responds that it is not required to allege the parties of its business relationships with specificity at the pleading stage, only that RDK could prove enough facts to support its cause of action.   (Dkt. No. 31 at 9.)

To satisfy the first prong of a tortious interference claim, a plaintiff may allege "tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large."   *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So. 2d 812, 815 (Fla. 1994).   "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered."   *Id.* at 815.   The Florida Supreme Court has stated that "in order to establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with *identifiable customers*."   *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.,* 687 So.2d 821 (Fla.1996) (emphasis added).

Here, RDK claims that E-Z Pack "strong arm[ed] [RDK's customers] into breaching contracts and terminating their business relationships with RDK."   (Dkt. No. 23 at ¶¶ 32-33.) RDK also claims that E-Z Pack was aware of RDK's business relationships as a result of supplying equipment to RDK for resale, obtaining confidential information, and hiring two of RDK's

16

employees.   (Dkt. No. 23 at ¶ 32).   RDK states that the relevant advantageous business

relationships and contractual agreements were between it and "*several customers* throughout the

Southeastern United States."   (Dkt. No. 23 at ¶ 31 (emphasis added).)   Thus, the relevant inquiry

for the Court is whether RDK's "several customers" language sufficiently alleges a business

relationship with "identifiable customers," which is required to survive a motion to dismiss, as

opposed to merely the "community at large."   *See Coach Services, Inc. v. 777 Lucky Accessories,*

*Inc.,* 752 F. Supp. 2d 1271, 1273-74 (S.D. Fla. 2010).

RDK argues that the Southern District of Florida case *Future Tech v. Tae Il Media* should

guide the Court's analysis in deciding whether its "several customers" language satisfies the

pleading requirements under Rule 8.   (Dkt. No. 31 at 9-10.)   In *Future Tech*, the Southern

District of Florida found that the language in the plaintiff's complaint, alleging advantageous

business relationships "with each of the customers in its business channel," was sufficient to defeat

a motion to dismiss.   *Future Tech Intern., Inc. v. Tae Il Media, Ltd.*, 944 F.Supp. 1538, 1566-73

(S.D. Fla. 1996).   Specifically, the court in *Future Tech* stated that:

> In Florida, a plaintiff may properly bring a cause of action alleging tortious
> interference with present or prospective customers but no cause of action exists for
> tortious interference with a business's relationship to the community at large.
> *Southern Alliance Corp. v. Winter Haven*, 505 So.2d 489, 496 (Fla. 2d DCA 1987).
> As a general rule, an action for tortious interference with a business relationship
> requires a business relationship evidenced by an actual and identifiable
> understanding or agreement which in all probability would have been completed if
> the defendant had not interfered.   *Ethan Allen, Inc. v. Georgetown Manor, Inc.*,
> 647 So.2d 812, 815 (Fla.1994). A plain reading of Plaintiff's claim reveals that
> Future Tech is not grounding its tortious interference claim upon relationships with
> the community at large. Instead, it asserts that the Defendants have interfered with
> advantageous and on-going business relationships with existing customers. Compl.
> at ¶¶ 101-105. Although the complaint is drafted at a high order of abstraction, and

> does not specifically identify each of the relationships allegedly interfered with, we are hard pressed to conclude that at this early stage of the proceedings that Future Tech could prove no facts to support its cause of action. Additional specificity is not required under our liberal system of notice pleading.

*Future Tech Intern., Inc. v. Tae Il Media, Ltd.*, 944 F.Supp. 1538, 1569-70 (S.D. Fla. 1996).[3]

In contrast, E-Z Pack argues that RDK's "several customers" language is insufficient to state a claim for tortious interference because such a claim "requires a relationship with a particular party, and not just a relationship with the general business community." (Dkt. No. 25 at 11.) Here, however, RDK does not allege that the advantageous business relationships were with the business community at large. *See Coach Services, Inc. v. 777 Lucky Accessories, Inc.,* 752 F. Supp. 2d 1271, 1273-74 (S.D. Fla. 2010) (finding that the defendant's allegation that the plaintiff interfered with its plan to sell sunglasses with "various customers" was "too vauge and abstract to satisfy the first element of a tortious interference claim" where it referred to the "community at large instead of [] 'identifiable customers'"). Instead, RDK states that it "enjoyed advantageous business relationships, including contractual agreements, with several customers throughout the Southeastern United States." (Dkt. No. 23 at 9.) The Eleventh Circuit has stated that "[a] business relationship need not be evidenced by a contract, but it generally requires an understanding between the parties that would have been completed had the defendant not interfered." *International Sales & Service, Inc. v. Austral Insulated Products, Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (quotations and citations omitted). Since RDK alleged that its

---

[3]   The Court notes that the court in Future Tech applied the previous "no set of facts" pleading standard. However, the analysis of the motion to dismiss the claim for tortious interference is still helpful in deciding whether the Plaintiff's "several customers" language satisfies the new "plausibility" pleading standard under *Twombly*.

business relationships with "several customers" may be evidenced by contractual agreements, it is plausible that such relationships may be identifiable as opposed to speculative. *Id*. Further, the Eleventh Circuit has acknowledged the issue of establishing the existence of advantageous business relationships in a tortious interference claim is "an area of state law that is lacking in clarity." *International Sales & Service, Inc. v. Austral Insulated Products, Inc.*, 262 F.3d 1152, 1158 (11th Cir. 2001). Therefore, since the Court is satisfied that RDK has alleged enough facts to state a claim for relief that is plausible on its face, and the determination of whether evidence supports RDK's alleged business relationships is premature at the dismissal stage, the Court finds that RDK's Count VI tortious interference counterclaim should not be dismissed.

## B.   Motion for More Definite Statement

In the alternative, E-Z Pack argues that in the "event that the Court does not dismiss the Amended Counterclaim … E-Z Pack seeks alternative relief pursuant to Federal Rule of Civil Procedure 12(e) and request [sic] that RDK provide a more definite statement of its Amended Counterclaim." (Dkt. No. 25 at 12.) Federal Rule of Civil Procedure 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Courts look to the pleading requirements of Fed. R .Civ. P. 8, when considering a motion for a more definite statement. *Palma Vista Condo. Ass'n of Hillsborough County, Inc. v. Nationwide Mut. Fire Ins. Co*., 809-CV-0155-T-27EAJ, 2010 WL 2293265 at *1 (M.D. Fla. June 7, 2010) (citing *Mitchell v. E-Z Way Towers, Inc.,* 269 F.2d 126, 132 (5th

Cir.1959)).[4]  A pleading that satisfies the notice pleading standards of Rule 8 is thus sufficient to survive a Rule 12(e) motion for a more definite statement. *See Palma Vista Condo. Ass'n*, 2010 WL 2293265 at *1.

Here, as to the Counts I, II, III, V, and VI of the Amended Counterclaim, the Court finds that the allegations are not "so vague or ambiguous" that E-Z Pack could not reasonably be able to frame a responsive pleading.  *See Royal Shell Vacations, Inc. v. Scheyndel*, 233 F.R.D. 629, 630 (M.D. Fla. 2005) ("A motion for more definite statement should not be used as a means of discovery.").  Therefore, the Court finds that E-Z Pack's Motion for More Definite Statement should be denied.

**C.    Motion to Sever Defendant's Amended Counterclaim**

**1.        Legal Standard**

Federal Rule of Civil Procedure 21 states that "the court may sever any claim against a party."  Fed. R. Civ. P. 21.[5]  "Courts are given discretion to decide the scope of the civil action

---

[4]   Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

[5]   E-Z Pack has also argued for the counterclaims to be bifurcated into separate trials. (Dkt. No. 26.) This argument, however, confuses severance with bifurcation.   The Seventh Circuit has stated that:

> "[A] district court may sever claims under Rule 21, creating two separate proceedings, so long as the two claims are "discrete and separate." In other words, one claim must be capable of resolution despite the outcome of the other claim. By contrast, bifurcation under Rule 42(b) is appropriate where claims are factually interlinked, such that a separate trial may be appropriate, but final resolution of one claim affects the resolution of the other."

and to make such orders as will prevent delay or prejudice." *Acciard v. Whitney,* No. 2:07-cv-476-UA-DNF, 2008 WL 5120820, at *1 (M.D.Fla. Dec.4, 2008) (internal citations and quotations omitted).   When exercising its discretion a court may consider the following factors: whether the claims arise from the same transaction or occurrence, whether they present some common question of law or fact, whether severance would facilitate settlement or judicial economy, and the relative prejudice to each side if the motion is granted or denied.   *Fisher v. Ciba Specialty Chemicals Corp.*, 245 F.R.D. 539, 541 (S.D. Ala. 2007).

    **2.**     **Analysis**

    E-Z Pack requests that the Court sever RDK's counterclaims and order separate trials on the merits, arguing that the counterclaims arise out of separate and distinct facts and concern separate evidence from the claims in the Amended Complaint. (Dkt. No. 26 at 5.)   In addition, E-Z Pack argues that "[t]he Amended Counterclaim thus elevates the Federal Litigation from a two party dispute based upon a simple contract and breach of the contract to much more complex and extensive contested matters."   (Dkt. No. 26 at 7.)   Thus, E-Z Pack cautions that it will be prejudiced if the counterclaims are not severed due to extra expense, delay, and the potential for issues to be confused.   (*Id.*)

    RDK contends that its claims should not be severed because they are "intertwined and related to the same incidents and sequence of events underlying [E-Z Pack's] claims in the Amended

---

*Gaffney v. Riverboat Services of Indiana, Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (internal citations omitted).   Because E-Z Pack argues that RDK's counterclaims are factually distinct from E-Z Pack's claims in its complaint, severance is the proper motion.   *Id.*   The Court will therefore only consider the motion to sever, not the motion for separate trials.

Complaint."   (Dkt. No. 32 at 2.)   Specifically, RDK claims that it and E-Z Pack were continuously in business together supplying and renting equipment, and both the claims and counterclaims concern the series of transactions and agreements incident to the "shoring up of the parties' financial relationship in September and October 2009."   (Dkt. No. 32 at 3.)   In response to E-Z Pack's arguments that the issues will be confused and severance will make discovery more difficult, RDK points to the fact that because E-Z Pack has moved to strike RDK's demand for a jury trial, it is unlikely the issues will be confused in a bench trial.[6]   (Dkt. No. 32 at 6.)   RDK argues further that allowing the claims to be tried once together will actually make discovery and the trial easier because the claims in the Amended Complaint and Amended Counterclaim will concern the same evidence, witnesses, and testimony about the parties' transactions in 2009. (Dkt. No. 32 at 6.)

RDK's counterclaims involve the same series of business transactions in 2009 and 2010 when the parties were seeking to shore up their financial relationship as are at issue in E-Z Pack's Amended Complaint.   Since the Confidentiality Agreement was executed so that RDK could give E-Z Pack the confidential business information it needed to execute the Accounts Payable Agreement and Mortgage Agreement, which are the basis for the claims in the Complaint, E-Z Pack's Count I breach of contract counterclaim and Count V and VI misuse of confidential information counterclaims arise from the same series of events and likely concern the same witnesses.   In addition, RDK's Count II and III counterclaims for breach of purchase/rental orders

---

[6]   On November 17, 2010, the Court entered an Order denying E-Z Pack's motion to strike RDK's request for a jury trial.   (Dkt. No. 22.)

and open account concern the ongoing business relationship and transactions that occurred before, during, and after the parties' efforts to shore up their financial relationship in 2009 and 2010. The attached invoices range in due date from April 2, 2009 to June 1, 2010 and evidence a series of business transactions within the months that the parties were executing a plan to shore up their financial relationship.   (Dkt. No. 7 Ex. B.)   The Court also notes that judicial economy will be served by not severing the breach of purchase/rental order claims.   Requiring RDK to pursue these claims separately would result in added time and delay, the filing of duplicitous suits, and duplicative discovery.   Thus, E-Z Pack's motion to sever (Dkt. No. 26) should be denied.

### III.

For the foregoing reasons it is **RECOMMENDED** that:

1)   E-Z Pack's Motion to Dismiss (Dkt. No. 25) be **GRANTED** as to Count IV of the Amended Counterclaim and **DENIED** as to Counts I, II, III, V, and VI of the Amended Counterclaim;

2)   E-Z Pack's Motion for More Definite Statement (Dkt. No. 25) be **DENIED**; and

3)   E-Z Pack's Motion to Sever (Dkt. No. 26) be **DENIED**.

**IT IS SO REPORTED** at Tampa, Florida, this 10th day of August, 2011.

ANTHONY E. PORCELLI
United States Magistrate Judge

23

**<u>NOTICE TO PARTIES</u>**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) (*en banc*).

Copies furnished to:

Counsel of Record